There are six cases on the calendar this morning, three argued cases from the PTO, each happened in one trademark, two veterans cases, a government employee case, and the last three submitted on the briefs and will not be argued. The first case is Southwire Company v. Cerro Wire, 2016-2287, Mr. Bradley. May it please the Court. The Board's obviousness determination must be reversed. The 30 percent reduction limitation is not inherent from the prior article. Inherency requires certainty. Well, the 30 percent isn't even in the application, aside from the amended claim. It's sort of a new matter, isn't it? It's not at all, Your Honor. It is in the application. The specification clearly shows examples in which the pulling force was reduced 50 percent even, and there are several examples. But in any event, the steps are in Summers, aren't they? And so what is it that's different from Summers that leads to this special 30 percent limitation? Summers does not disclose or suggest the 30 percent reduction limitation, and there's not even any argument nor any finding that it was. The argument and the finding was only— But is there any suggestion that your steps differ in any material way from Summers? Yes, Your Honor. The steps require specifically a process in which you have a limitation—a reduction in pulling force of at least about 30 percent. No, that's not my question. My question, putting aside the 30 percent, is your patent says here are the few things—and let me just make it a hypothetical to make it easier. Say the patent says do A, B, C, and D, and you'll get result X. And the prior art says do A, B, C, and D in the exact the same way but doesn't say you'll get result X, even though they're the exact same steps doing the exact same thing so that you will get the result X. Why isn't that inherent? That situation would be inherent, but that's not the situation we have here. So what in your steps, apart from the 30 percent limitation, are different than Summers? Summers only discloses the notion of introducing a lubricant into a fiber optic cable sheet. It doesn't talk anything about the pulling forces. It doesn't say—and it's not the case, as Mr. Sassi's data show—it's not the case that the 30 percent reduction in pulling force necessarily flows from that. Summers doesn't—if you practice the steps of Summers, all you have is the claims before these were amended in the prior reexamination. You have a lubricant and a cable, and that's why those claims were amended. They were amended to add the narrowing and specific limitation requiring a 30 percent reduction in the pulling force. What particularly about your patent results in a 30 percent limitation that's not in Summers? The particular selection of polymers and lubricants in the right concentrations. It is not the case. So are those polymers—sorry, go ahead. No, but you didn't claim those. Where is your claim to a particular type of lubricant that will result in that? It's built into the 30 percent reduction limitation because, as the data showed— That's the result. That's not the means for achieving it. I disagree, Your Honor. It is part of the steps that must be satisfied. You do not satisfy these claims simply by having a lubricant and a cable. It's only the subset of lubricants and cables in which you achieve a 30 percent reduction in pulling force, and that was not recognized in the prior art. There's no argument that it's recognized. The only argument is that it was inherent. The data clearly showed that it was not inherent. The board found, as a factual matter, that the data showed otherwise. It showed that the pulling force can actually increase, not inherently decrease. Certainly not inherently decrease by at least about 30 percent. Was the 30 percent added in an amended claim? Not in this reexamination, Your Honor. This patent has been subject to original examination, two ex parte reexaminations, and now this is a third reexamination. This is a critical patent in the industry. This one, excuse me, in the prior reexamination... But the 30 percent was not in the original specification. That number is not, but the disclosure is certainly... You're asserting the number is critical. The disclosure supports the 30 percent reduction limitation. The examples used do not have to... It's clear under Ariat that the examples... You don't even have to have examples to have a sufficient written description. The examples here used a 50 percent, which is really kind of the preferred method here. But the claims are allowed to be broader than that. There certainly is no 112 issue before the court, nor could it even be raised here. And that's something we can deal with. I think the problem is your claim itself and your disclosure is that basically hinges on the notion that you say... That's the point of our written description, that one of skill in the art would know which type of lubricant and in what quantity to apply, simply by virtue of you saying the force has to be reduced by 30 percent. That's the point, right? That they would know how to put together a finished electrical cable that has these characteristics. According to the specific test method that's set forth in the claim, that's very specific. There's figures two and three in the patent specification. The claim one is not very specific. It doesn't specify a type of lubricant, a quantity of lubricant, or any of that. You're saying a skilled artisan would know how to make such a thing because they would be able to figure out or know what quantity and type would result in the 30 percent reduction, correct? A person of skill in the art reading this specification would know whether their process that they're doing would fall within the scope of the claims. I'm not sure if that's the question. So I'm asking you, the claim articulates no lubricant, correct? It doesn't specify a lubricant. The claim articulates no quantity of lubricant to be applied. Not by name, but it still has to be that which achieves the pulling force reduction that's called. That which achieves the result that you want, and you're saying a skilled artisan would know how to create a cable that meets that limitation by virtue of what's disclosed in the spec. Yes. Okay. So the problem for you is you've got this claim that discloses no particular lubricant and no particular quantity, but just says reduction in pulling force to 30 percent. You're saying a skilled artisan would know how to do that. Well, the problem is Summers teaches lubricants in various quantities and even talks about pulling force. Let's see. Summers Claim 1 expressly says for low resistance to cable pulling force. I'm having trouble understanding how your claim is more specific than Summers' disclosure and why, as a result, it doesn't read right on it. That sounds to me, Your Honor, like an issue that was not before the board, not addressed by the parties, not even raised by CERO, which is, as I understand Your Honor's question, the issue of whether Summers has a disclosure that would make it obvious or suggest to a person of skill in the art that you could do this. There is no argument here. CERO never made that argument. CERO recognized that it would not be able to prove – or I'm assuming they recognized they would not be able to approve that this was obvious to a person of skill in the art. So instead, they said, well, we're going to argue that it's inherent. It naturally flows. And the board was very clear in saying our finding is only based on inherency, only inherency, not disclosure. Where did the board say that so clearly, that they found Summers inherently discloses the 30 percent reduction? On – one example is APPX 32. The board said, quote, the basis for the rejection was that the combination of Summers, Dow, and UL 719 inherently teaches the limitation. And where this arose was in a request for a rehearing. Southwire presented the notion that Your Honor was just suggesting, whether Summers just discloses or suggests to a person of skill in the art based on the limited bit that it does teach. CERO came back in its response and very clearly said no. They said – they said that argument is, quote, irrelevant and should be entirely disregarded because it does not address the basis for the rejection. That's on A31. CERO said we are not arguing anything about the disclosure of Summers rendering this limitation obvious or known to a person of skill in the art. And the board came back on the next page and said, yes, that's right. Our finding is only based on inherency. The basis for the rejection was that the combination of Summers, Dow, and UL 719 inherently teaches the limitation. Our new arguments – we were raising the fact that Summers doesn't disclose this. The board said that's a new argument and it, quote, will not be considered. That is not the issue that's before this court. This court cannot rely on grounds that were not raised by CERO or addressed by the examiner or the board. It was always inherency, and this is not inherent. The data shows that. The board found that the test data doesn't necessarily decrease – certainly doesn't necessarily decrease by at least about 30 percent as claimed. The data sometimes increases. If you're claiming a new compound and it is asserted that a particular process which produces another compound also inherently produces this compound, then it's clear in the law that the so-called inherently produced compound must always and clearly be produced. This is a result. This isn't a different – this isn't an inherent substance. This is a result of procedures that are in the prior art. It's not a result, Your Honor. It is – as Mr. Sasse's data showed, it doesn't necessarily follow. The result is 30 percent less force required. But it doesn't – that 30 percent reduction plainly does not result from simply introducing a lubricant into a cable sheet. The claim only encompasses those permutations and combinations of lubricants and polymers that would actually achieve that. Or is it a property, and you can't claim a new property of an old process? This is not a new property of an old process. This is a new process. The invention for decades – the evidence showed in the record that for decades folks had been using externally applied lubricants that were messy and time-consuming and expensive. And Southwire's invention here changed the industry. That's why we've been litigating for some nine years on these patents. And it's terribly important. And it's not just some process like Summers recognized. It's not that. There's even, like I said, no argument of that. It's only whether it's inherent. And there's just – there can be no question that it's not inherent. The data shows it's not inherent. The board found, supported by substantial evidence, that it's, as a factual matter, doesn't necessarily follow. This court's cases are clear. It's certainty. It has to always be the case. And here it's clearly not. Do you have a question, Judge Hughes? Okay. Also, as part of that secondary considerations evidence, there's quite a lot of it here. The board found praise in the industry. The evidence showed that this worked like a magic trick and that it was highly praised. It's used – it's found in every big box. Did the board also found that it was praised because it was already invented earlier and in practice? They used that theory to avoid applying the secondary considerations evidence, which was one of the flaws. They essentially set – They didn't avoid applying it. They looked at it, and they rejected it as insufficient. They rejected it purportedly because Summers already disclosed it. But as this Court said in Ray Tiffin, that need would not have been long felt if it had been solved by the prior art. If it had been solved by Summers, why was there a long-felt need for decades here? I see that I'm ending my rebuttal time. I'd like to reserve it. We will serve it for you, Mr. Bradley. Mr. Stedman? Good morning, and may it please the Court. I'm Paul Stedman for the defendant and the appellee. I have nothing to add to the conversation that's already been had, but I'm happy to answer questions of the panel if there are questions. I would like you to deal with the inherency issue. Okay. So the inherency issue is actually misstated. Under cases as long ago as in Ray Best, in a case that's before the board and the examiner, in a case like this with a series of process steps and then a claimed result of the process steps, the examiner is allowed to find the same process steps in the prior art and use that to make a prima facie case of obviousness. The burden is then on the patentee to show that the prima facie case is wrong. Here they found the exact same process steps in the combination of Summers and Dow and UL-719. Summers uses the same process steps. That is, it puts the lubricant and the plastic into the extruder and extrudes the lubricant with the plastic sheet over the cable. Council mentioned that it is an optical fiber cable, but the specification of the 301 patent specifically says that the patent includes fiber optic cables. So it's exactly the same process. It's also exactly the same plastic sheet material. It's nylon, which is recited as one of the permissible plastic materials in the specification. And it's exactly the same lubricant. The siloxane oils, which is the same thing that's called out by Dow and I believe by Summers, is exactly the same lubricant. Is the 30% of claim limitation? I do not believe it is proper limitation, Your Honor. It can't be. Under the IPXL case, we're not allowed to argue that the claim is invalid under 112.6. But if you look at the claim and the way that it is structured, the claim is a process for making cable that includes the steps of combining a preselected lubricant to provide a reduced coefficient of friction in which the lubricant is of a type which migrates through said jacket to be available at the outermost exterior surface. Comma, the finished electrical cable having the characteristic that an amount of force required to install blah blah blah is at least about a 30% reduction. If this is a process claim, then those steps must be process steps. If they are claiming the nature of the resulting cable, that is directed to the apparatus or the thing. Under IPXL, one claim cannot be directed to both. So if they had a more specific claim here recognizing that not all combinations of cable and lubricant and everything else result in 30%, maybe some is only 10, maybe some is 50. If they have these specific process steps to say do it in this way with this combination of lubricant, this thing, and that will result in 30% reduction, that might differ from the prior part. Assuming some didn't have the same specificity. It might, but Dow has more specificity. So if you look at Dow, Dow was a commercially available master batch for exactly this purpose, for putting lubricant into plastic for use in things like cable sheets. Dow specifically says that at the highest addition levels, 2% to 10% siloxane, 10% is a lot of lubricant in the plastic. Improved surface properties are expected, including lubricity, slip, lower coefficient of friction, and greater mar abrasion resistance. That's at appendix 192. Then at appendix 194, Dow has a very helpful table where it shows that with the addition of additional weight percent siloxane, up to 5%, the coefficient of friction drops by more than half. So what they want to say is, well, you have to have the words pulling forces reduced, but this shows a more than 50% reduction in the coefficient of friction, which is the only mechanism identified in the 301 patent for reducing the pulling force in the first place. So even if you were to be that specific, I would say the combination of Dow plus Summers actually does teach the 30% reduction limitation. But under the Parr Pharmaceutical case and other cases like that, I believe In Re Cuban is another one, the court has said that the patent itself can define a limitation at issue as a property that is necessarily present. And if we look at the 301 patent disclosure itself, I believe this was referred to earlier in the argument, at column six. The data in the patent, which doesn't show any particular amount of lubricant or any particular lubricant identified, it just shows lubricated samples versus unlubricated samples. Column six of the 301 patent itself claims that the data recorded proved that cable construction having a surface lubricant reduced pulling forces. And then a little farther down at line 20, it says, it was found using this method that lubricated specimens yielded approximately a 50% reduction in pulling force when compared to standard non-lubricated cable specimens. So the patent itself is saying, if you add lubricant that's sufficient to reduce the coefficient of friction, you are going to get a reduction in pulling forces and the only number that it specifies is a 50% reduction, which just happens to be almost exactly the same teaching that you see in Dow. Going back to the earlier question that was posed to you about whether this is a proper limitation, I just want to sort of follow up because you pointed out that this is a method claim. Yes, of course, it's a method claim. But that's really a structural element and that's sort of not appropriate in the method claim. Suppose this weren't a method claim. Suppose it were not a method claim? Not a method claim. It's an apparatus claim to a cable. It would be appropriate then, wouldn't it, in terms of patent claiming, to say, you know, select a lubricant in a, if a skilled artisan, if the written description supported this, select a lubricant in a quantity that would result in a 30% pulling force. If a skilled artisan knew how to do that based on the patent's disclosure, those would be structural elements and then that pseudo result would really be defining the particular elements in the claim. That would be appropriate, wouldn't it? I agree with you. I can imagine a claim like that that could be drafted. But that's not this claim. That is not this claim. If there are no further questions, I'll yield the balance of my time to the panel. Thank you. No one loses a case by giving up time. Mr. Bradley has about two and a half minutes of rebuttal time. Going to the point just raised there by Judge Moore, this claim is a method claim, but it doesn't claim all introductions of lubricants into polymer sheets. That's what the claim looked like before the reexamination and before this limitation was added. These claims cover only those processes in which there's a reduction of at least 30% in the pulling force. It is a much narrower set of processes, and it doesn't necessarily follow that simply by introducing a polymer into the sheath that you achieve the 30% reduction limitation. And that's why the board's finding on inherency is just flat wrong. It has to be reversed. As I mentioned in my opening argument, their finding, their reasoning was only based on inherency, and it's just not inherent. They found so. Now, to be clear, this 30% reduction limitation is a limitation. In the prior ex parte reexams, the original broader claims without the limitation were ruled invalid, and then when this limitation was added, it came out of reexamination, and that's the ones we have here. So it's absolutely a limitation, and that counts, and it must be satisfied either expressly or inherently in the prior art. There's no argument of an express disclosure or suggestion. The examiner never reached that. The board never reached that. The only argument was inherency. It's not inherent. It's clear that it's not inherent. Also, counsel mentioned IPXL of mixing apparatus and process claims. The cases make clear that a process claim may include product characteristics. The process can be performed in a way that achieves certain physical characteristics, and that's not improper under IPXL, of course, nor is that issue presented here, but the claim is very appropriately defining a particular method. That's not just any method that necessarily achieves this result because it's not a result. The board found as much. It doesn't necessarily follow. Counsel mentioned that Dow has a 10% lubricant. He said that's a lot of lubricant. Well, Mr. Sasse's test data showed that for 10% PTFE lubricant, the pulling force actually goes up. It certainly wasn't obvious to a person of skill in the art, nor was there even an argument. The only argument was inherency. The only finding by the examiner and the board was inherency. This court must reverse because it's not inherent. I'm out of time. Thank you. Thank you, counsel. We'll take the case under advisement.